Good morning, honors. Michelle Anderson on behalf of Mr. Ortiz-Ortiz. There are four issues on appeal, and I have learned recently that the lead issue, that is whether or not 288C constitutes sexual abuse of a minor, has already been submitted to another panel. I filed a notice of related cases, but in case your honors haven't seen that yet, that is U.S. v. Castro 0950164. Also, in light of some of the earlier arguments today related to the Johnson Supreme Court case, it looks like that might have some impact in the reasoning that should be used in making that determination in this case. So for those reasons, I'd like to focus my time on the three remaining issues on the brief, unless your honors have specific questions on that issue. The first issue I'd like to talk about is the defendant's request for a new attorney. And what happened here is at the sentencing hearing, Mr. Ortiz-Ortiz told the district court that he wanted a new attorney. And the district court, without any inquiry, said no, it's too late. A review of a denial of that request is governed by three factors. That is the adequacy of the court's inquiry, the extent of the conflict between the client and the attorney, and the timeliness of the client's motion. With respect to the adequacy of the court's inquiry, this court, an appellate court, has nothing to review. Now, the government's primary argument on this issue is that no actual inquiry was required because we can guess based on what the judge was thinking based on the docket, despite the silent record. Well, he says you're too late. This whole case is over. Anything more? Well, I want another attorney. It is awfully late. I would guess that the judge is probably weighing timeliness more than any other factor when he says it's too late. Well, I agree that the only factor we could arguably say existed is this timeliness factor. The district court did say that. The district court said, yes, it's too late. But on this record, we don't know that it was untimely. More importantly, though, the bottom line is if the district court thought it was untimely, it should have asked the defendant why he didn't make the request earlier. That's required by this court under U.S. v. DeMora, which is 56F3rd at 1205. And that was also recently cited in a case that came out yesterday, U.S. v. Reyes-Basque, which has a discussion of what inquiry is required when we are examining a request like this. And finally, the district court didn't explain why it thought it was too late. And that doesn't make sense anyway on this record. The government concedes that there would be no significant delay or inconvenience, which would result from the substitution of counsel. You can find that concession in the government's answering brief on page 36. And also, this is a relatively straightforward case. The defendant pled guilty to a single count of illegal reentry without a plea agreement. There just simply would not be any significant delay in honoring the defendant's request. But more importantly, we need to get to the bottom of what that conflict was. And there's no case cited by the government that supports the conclusion that the district court can bypass any inquiry. There are cases that say we don't need to have a hearing, but there is no case cited by either party and none that I've seen that says the judge can bypass the initial inquiry in the first place. Does he have to say anything more than I want another attorney? The defendant? I haven't read anything that says so. I think the cases do say that the judge needs to ask why. What if the district court judge had begun the sentencing discussion, had started with the sentence, and the defendant had that outburst, I want a different attorney? Do the same rules apply in that context? You mean if it happened right at the very outset of the hearing versus sort of in the middle of the hearing? As I read the record, it sounded like the judge was just getting ready to embark on the discussion of what the sentence was going to be. What if the judge had already embarked on that and the defendant had that outburst, I want a new attorney? I don't think that that makes any difference here. But I think when we read the record carefully, what happens is the defendant expresses some concern about the facts that the judge is going to rely on in sentencing him. He expresses, he says, look, this didn't happen to me. There's this 2002 conviction, my attorney. This is being used against me. I am letting you know that this needs to be investigated. At that point, the judge cuts him off. He doesn't let him finish and says, look, I'll tell you what my finding is after I speak to the government. And at that point, he speaks with the government and the government lays out its position. And during that discussion, that's when Mr. Ortiz-Ortiz makes his request. So I don't know that it could have happened that much earlier in the proceeding. And in any case, whenever it happens in the proceeding, the judge needs to ask why. And the judge didn't do so here. So you don't have any record to review. And Your Honor's point is well taken. He did say it was untimely, but he didn't ask Mr. Ortiz-Ortiz why he didn't make that request earlier. And this ties into the issue with respect to Rule 32. Mr. Ortiz-Ortiz himself lodged factual allegations, factual objections to the alleged 2002 firearms offense. And where there is a factual objection, the judge can't rely on the pre-sentence report exclusively. Now, the government argues that there is no violation of Rule 32 because the district court described that discussion as moot when looking at guidelines calculations. But I don't think that argument is persuasive. The government ignores how the district court used that very conviction against Mr. Ortiz-Ortiz under the 3553 factors. The district court says that ER 13 to 14. Now the aggravated factors listed in the pre-sentence report. Age 46, he was involved in drugs and allegedly a firearm. The district court in that moment acknowledges that this is an offense that Mr. Ortiz-Ortiz was contesting. But instead of saying he wasn't considering it, he did and he considered it as an aggravating factor under 3553. Are you saying he could have presented a collateral attack on a prior state conviction in that setting? Because our cases say that we can't, right? Well, there are some carved out exceptions where you can. The government argues that those don't apply here. We don't really know what that collateral proceeding is, so I don't know that we can say outright that those exceptions don't apply here. But I don't think it's true to couch his objection so narrowly. I don't think he was merely objecting to the, I don't think he was conceding that the conviction against him was valid and was not valid only because of the existence of a collateral proceeding. What exception do you think is applicable here? Because in reading the record, it seemed like he was saying he shouldn't have been convicted, not that he was denying that the conviction existed. Well, I think that he does say, I think that is one reading of the record, and that's the government's interpretation of the record. But what he also says is this, and this is something that the government ignores, he says that the conviction is wrong, the facts are wrong, I have papers here to prove it. He tells the judge, please don't sentence me, this needs to be investigated. And then if you add in that the government didn't move for or provide any judicially noticeable documents to support an upward enhancement under this conviction, or that the conviction even existed, I think the record is much more murky. I don't think that it's fair to narrowly construe the defendant's broad objection as only an attack based on the existence of a collateral proceeding, because that's not what the record says. It says, look, these facts are wrong, this didn't happen, I don't know exactly what happened. Counsel, Judge Gould with a question. So didn't the judge, however, say he was doing the enhancement based on the sex abuse crime, not on the firearm crime? Well, yes, yes and no. He does make a finding that the firearms crime is a plus 16 under the guidelines calculation, but if you look later in the sentencing proceeding, Your Honor, when he's listing the aggravated factors under 3553, he lists, again, this firearms conviction. So it was used against the defendant at his sentencing. So even if we characterize that initial discussion as moot, that only applies to the guidelines calculations alone. It doesn't apply to the overall sentencing under 3553, because under 3553 he used the firearms conviction against him as an aggravated factor. I see that. I only have 18 seconds left, and I'd like to reserve that for you, Bob. We'll hear from the government. Good morning, Your Honors. May it please the Court. Helen Hong on behalf of the United States. It is my understanding that this Court has under submission the California Penal Code Section 288C in the Castro matter, but it's also my understanding that no decision has yet been issued. And so the question that this Court is asked to decide today is whether California Penal Code Section 288C1, which was enacted to provide children with special protection from sexual exploitation, is protecting children from abuse. And the answer within the common, contemporary, and ordinary meaning of the term of abuse is yes. And it's the union of four elements that are required to sustain a conviction under Penal Code Section 288C1 that drives the conclusion that the full scope of the conduct covered by the statute covers abuse. And that's the age of the victim, the 10-year age gap between the perpetrator, who would never naturally fall within the peer group of the victim, the act of the touching, and the lewd and lascivious intent with which the exploiter touches the child. What do we do about the issue that the act is interpreted under California law to include any touching, and Medina Villa and Estrada Espinoza say the act should be a sexual act? And Medina Villa answered the question of whether the acts covered by Section 288C are sexual in nature. And that's because Section 288A and 288C prescribe the same conduct, which is a touching of a child affected with lewd intent. And so the question of whether 288C covers sexual acts has been foreclosed and answered by the Medina Villa panel. But when we compare that to Medina Villa, and this is where it's a little bit tricky, in Medina Villa it's looking at younger victims, whereas in our case, in 288C, it's 14- and 15-year-olds. So it doesn't seem to meet that prong of Medina Villa. And then Estrada Espinoza doesn't have, says engagement in a sexual act, doesn't have the same interpretation of what the act could be. Well, and that's why the union of the four elements that are necessary to sustain a conviction under 288C1 is important here. In People v. Martinez, the California Supreme Court identified the purpose that the legislature had in enacting 288 and 288C1, and that is to protect children, to provide special protection to children from sexual exploitation. And although the appellant has identified the broad range of conduct that is covered by 288A and 288C1, the California Supreme Court rejected the sort of apocalyptic scenarios. The appellant provides here a warm embrace or a hug that is innocently and warmly received. And in the Supreme Court's own words at 11 Cal 4, 434 at 452, the California Supreme Court stated, as the defendant's own survey of the law reveals, convictions have been obtained and upheld only where the defendant's lustful intent was manifest under the particular circumstances. In all cases arising under the statute, the people are required to prove that the defendant touched the child in order to obtain immediate sexual gratification. We have no reason to believe that the charges will be filed or sustained where no such evidence exists. I don't know whether to interrupt your argument, but this is, as you said, under submission to another panel, and ordinarily, perhaps not every time, but almost every time, we yield to the panel that first gets the case under submission. So I hope you'll address the other arguments that were raised, too. Yes, Your Honor, and to answer Your Honor's question, Judge Ikuda, about the nature of the touching and the difference between the 14- and 15-year-olds covered in 288C1 versus 288A, I would like to point out to the court People v. Paz, which is the California Appellate Court's discussion of the legislative history behind 288C, and there the court explained that the inclusion of the decade age difference in the submission reflects a recognition that a sexually naive child of 14 or 15 could fall victim to a more experienced adult, a vice the legislature was attuned to and took action to prevent. This is consistent with the treatment that the California courts, as well as the country, has provided to individuals under 16 years of age, the distinction that the federal statute has provided between individuals 16 years of age and older and those that are 14 or 15. Turning to the Rule 32J objection, I guess first it's fairly clear from the record that whatever factual dispute existed about the existence of the conviction, the court resolved. And that's in excerpts of records, pages 8 and 11. The court said, I will go with the record here. There is a conviction on your record. And indeed, at the time, the defendant explained that he served five years of time. What he said was, I gave five years of my life for that conviction. And to be clear, it's not a conviction from that court solely for the felon in possession of a firearm conviction. He was also convicted at that time of another aggravated felony and a crime of violence, which is PC 422, threatening and intending to threaten or terrorize a victim. There's been no indication that the PSR was inaccurate. There were no objections to the existence of that 422 conviction. But that said, the court did rely on the 288C1 conviction as sexual abuse of a minor to enhance the base offense level 224 with 16 level enhancements so that the existence of the felon in possession of a firearm conviction was really a moot point in the district court's own work. What about counsel's argument, what about a felon's argument that the judge then later considered that conviction when deciding where to sentence? And yes, Your Honor, the court did mention the 2002 convictions in explaining in its lengthy explanation of the reasons why a 77-month term was reasonable here. But first, as I explained earlier, the court did make a finding and did resolve the issue of whether the conviction existed. And that's shown in excerpts of record pages 8 and 11, which is that the court found that the record is what the record is and that the conviction, he said, I will go with the conviction here. And in fact, the defendant's own words during the sentencing hearing suggested that he knew that he had been convicted of a crime. He thought he was wrongly convicted, but he knew that he had been convicted. And that type of collateral challenge to a conviction is what the court cannot address in a sentencing hearing. A sentencing hearing is not an appropriate forum to raise those types of collateral challenges. And the court did appropriately look at the fact of an arrest for, as well as the other convictions associated with that 2002 arrest, in determining and fashioning an appropriate sentence. To the extent that the court needs to make a finding here, the district court's findings are reviewed for clear error. And there's no clear error here that the conviction didn't exist or that the defendant had been convicted also for PC-422 or that he had been convicted of a slew of other crimes after he had already served 26 months for a prior 1326 conviction. The other crime that the appellant has raised is whether the district court abused its discretion in denying a mid-hearing, and really, truly, actually almost right before the court had sentenced the defendant, request for counsel. And we cannot examine the district court's conclusions in a vacuum. The court here had heard from the defendant on two prior occasions at this sentencing hearing. The defendant spoke twice. At one point said, all I have to say is that he wanted to talk about the collateral challenge to the 2002 firearms conviction. He never once hinted that there was any conflict with counsel. He never once hinted that there was a breakdown in communication with counsel. And, in fact, the record establishes the opposite. When Mr. Ortiz-Ortiz stood up and explained that he wanted to challenge the five years that he spent in prison for that 2002 firearms conviction, he also explained the circumstances that he viewed that led to the invalidity or wrongfulness of that prior conviction. Counsel then stood up and explained those concerns in more detail. He identified the name of the purported victim from that 2002 conviction, exemplifying that the counsel understood, had continued to communicate with, and did not suffer from an irretrievable breakdown or conflict with the defendant. In light of all of the circumstances that the district court had before it, as well as really the 11th hour at which the defendant raised his counsel's substitution request, the district court did not abuse its discretion in denying that substitution of counsel request. With that, I would submit unless there are any other questions. Thank you. I think you have 18 seconds. First, just briefly, on the 288C issue. Our position is under Pelayo-Garcia, 288C is not sexual abuse of a minor under either definition, under Medina-Villa or under Estrada-Espinosa. In addressing Your Honor's concern, specifically, Pelayo holds that sexual relations with younger children are significantly different than sexual relations with teenagers, and that's found at 589F3rd at 1016, so age matters. With respect to the government's argument regarding Rule 32, it cites for the record the judge says, look, I'm going to just stick with what's in the PSR. A conclusory statement is not sufficient when there's a factual objection. The government points to facts which they say corroborate what's in the PSR. They point to the statement that the defendant said, I spent five years of my life for that. We don't know what he's talking about. And according to the PSR, he only served 32 months for that conviction. At the proceeding he said, he did admit he went to prison, but we don't know for what, because throughout the proceeding he said it couldn't have been for possession of a weapon because he never had a weapon, and there was no... Counsel, is it true that he admitted that he was convicted in that case, but just claimed it was improper? I don't think it's that clear, so no, Your Honor. He said throughout the proceeding that it couldn't have been for possession of a weapon. He never had a possession of a weapon, and there was never an arrest in Orange County, which is where this alleged 2002 conviction happened. So I don't think it's crystal clear like that. And again, adding in the fact that the government didn't support this as a plus-16 enhancement with any judicially noticeable documents, I think it's an open question. And I don't think it's fair to hold against the defendant not using precise terms. I don't think we can expect a layperson to walk in and say, I object to the fact of my conviction, and further, it's not categorically a crime of violence. That was the job for his attorney. His attorney didn't do it. What would make you think that that conviction, if recognized by the judge in setting his final sentence, was material to him setting this within guidelines range sentence? Well, because he listed it as an aggravated factor under 3553, and I think that makes it material under CARTI, and also the more recent case of Rassam. Thank you, Your Honor. All right. We'll defer submission on this case pending Castro, and we'll take a brief recess.
judges: Canby, Gould, Ikuta